## TAXATION

### PROPERTY TAX – ELIGIBILITY FOR RENTERS' TAX CREDIT

March 31, 1994

*The Honorable Ellen R. Sauerbrey*
*House of Delegates*

You have requested our opinion concerning the effect on the Renters' Tax Credit Program of recent changes by the Department of Human Resources ("DHR") in the administration of the food stamp program and in the calculation of public assistance grants. Rather than distributing paper food stamps, DHR now distributes transaction cards that can be used to purchase food, just as food stamps were previously used. Additionally, DHR now reduces public assistance grants for those recipients living in public housing to offset the disparity between the housing cost for those recipients and the cost for the recipients not living in such housing.

Based on these changes, you have raised three questions regarding the interpretation of §9-102 of the Tax Property ("TP") Article, Maryland Code, the Renters' Tax Credit Program:

1.     Does the payment of a public assistance grant, which includes rent as a component of the grant, constitute the State's subsidizing housing for the recipient?

2.     Does a renter living in a rental property, the construction or rehabilitation of which was funded in whole or part through a State loan program administered by the Department of Housing and Community Development, in effect receive a pass-through subsidy by virtue of the lower financing costs enjoyed by the owner for construction or rehabilitation of the rental unit?

3.     Does the deposit of a food stamp allotment into an individual's account in a financial institution constitute "public assistance received as a cash grant"?

For the reasons stated below, we conclude that the answer is "No" to each of your questions.

**I**

**Public Assistance Grants**

The Renters' Tax Credit Program is set forth in TP §9-102. Initially, that program limited eligibility to low income individuals 60 years of age and over. In Chapter 1 of the Laws of Maryland 1992, 1st Special Session, TP §9-102 was amended to expand the eligibility to low-income individuals under 60 who have one or more dependent children under 18 living with them and who do "not receive federal or State housing subsidies or reside in public housing." TP §9-102(a)(9)(iv)3. From the enactment of the amendment, the State Department of Assessments and Taxation ("SDAT") has not interpreted the quoted language to exclude individuals solely because they were receiving public assistance other than housing.

Since dependent children must reside with the eligible, under-60 renter, the relevant type of public assistance is Aid to Families with Dependent Children ("AFDC"). The AFDC program is jointly funded by the State and federal governments. Under federal law, the State has numerous options for determining the amount of the grant. Since at least 1975, Maryland has chosen to base AFDC benefits on a consolidated standard of need that encompasses all of a family's needs, including housing. However, the housing portion of this calculation only represents a standardized estimate, because the amount does not vary according to the actual housing circumstances of the recipient.

Present federal regulations allow states to count certain housing subsidies as income for AFDC purposes, and Maryland does count up to $45 per month as income. But that is really only a method of calculating the actual grant amount. The more important fact is that federal regulations specifically prohibit any restriction imposed by a State agency on the use of the grant. 45 C.F.R. §234.11. Therefore, these grants represent a payment of funds to the recipient for whatever living expenses the recipient designates. It would be inconsistent with the federal regulations for the State to decide arbitrarily that a specific amount was paid for housing costs and then deny other benefits based on that allocation. Additionally, such an interpretation would be improperly focusing on the factors considered in the calculation methodology, rather than the nature of the grant itself as one intended for general use. Consequently, SDAT has not designated any portion of the AFDC grant to be a housing subsidy.

The legislative history of the 1992 amendment supports that conclusion. Prior to its enactment, two studies of the Renters' Program and its expansion to individuals under 60 years of age were conducted. In October 1989, the Department of Fiscal Services published *An Examination of the Feasibility of Expanding the Renters' Circuit Breaker Program*, and in February 1991, SDAT and the Department of Housing and Community Development jointly published the *Study of the Maryland Renters' Tax Credit Program*. Additionally, bills were introduced in the General Assembly to expand the eligibility to individuals under 60 in 1990, 1991, and 1992 before the successful passage of legislation in the Special Session of 1992. The purpose of that session was to balance the State budget in trying economic times, yet this portion of the bill expanded the credit program and increased the expenses of State government. Therefore, the new eligibility language was passed with a legislative history of similar bills being presented for several years and two published studies.

Individuals receiving AFDC are the same individuals who also meet the expanded criteria for the Renters' Credit. Both of the studies mentioned above discussed the expansion of the credit to the under-60 population, the corresponding number of new participants, and the financial impact. Yet, there was absolutely no discussion about the exclusion of AFDC recipients. This legislative history supports SDAT's interpretation that the legislative intent was to include these individuals.

## II

### State Loans for Construction or Rehabilitation Costs

Under TP §9-102(h)(1), "[t]he property tax relief that a renter may receive ... is the assumed property tax on real property less a percentage of the combined income of the renter." The percentages, which vary with income levels, are set out in TP §9-102(h)(2).

With certain exceptions that are not pertinent here, "combined income" means "the combined gross income of all individuals who reside in a dwelling ...." TP §9-102(a)(4). "Gross income," in turn, is defined as follows in TP §9-102(a)(6):

(i) "Gross income" means the total income from all sources for the calendar year that immediately precedes the taxable year, whether or not the income is included in the definition of gross income for federal or State tax purposes.

(ii) "Gross income" includes:

1. any benefit under the Social Security Act or the Railroad Retirement Act;

2. the aggregate of gifts over $300;

3. alimony;

4. support money;

5. any nontaxable strike benefit;

6. public assistance received in a cash grant;

7. a pension;

8. an annuity;

9. any unemployment insurance benefit;

10. any workers' compensation benefit; and

11. the net income received from a business, rental, or other endeavor.

(iii) "Gross income" does not include:

1. any income tax refund received from the State or federal government, including any refundable portion of the federal earned income tax credit; or

2. any loss from business, rental, or other endeavor.

The list of income items in TP §9-102(a)(6)(ii) includes the receipt of actual funds only. The rules of statutory construction would limit the interpretation of that definition to similar types of income actually received, as opposed to the inurement of indirect benefits. *See, e.g., In re Wallace W.*, 333 Md. 186, 634 A.2d 53 (1993) (applying doctrine of *ejusdum generis*).

Although the advantage derived by the State funding of development costs may be passed through to the residents, an individual's reduction of rent would only be an indirect benefit and could not be equated to the actual receipt of funds. Accordingly, SDAT has never counted that indirect benefit as income of an individual.

Moreover, a secondary goal of these State loans is the integration of low-income individuals with those of moderate income. Often, only a certain proportion of the units in these buildings are restricted to limited-income households in order to meet the requirement of the loan. Those units are not fixed and will shift in the building according to the occupants. There may even exist more low-income units than necessary for the loan. However, the amount of rent, and therefore any indirect benefit, would be dependent upon each tenant's income. An interpretation of TP §9-102 that would exclude a low-income tenant from the benefit of the Renters' Credit, regardless of the amount of the actual rent decrease, would act as a disincentive for those individuals to occupy these buildings or to apply for the credit. Therefore, such an interpretation would create an inconsistency in the administration of these two programs.


### III

### Food Stamp Benefits

The long administrative history of the tax credit programs requires the third question to be answered in the negative. Both the Homeowners' and Renters' Tax Credit Programs have existed with substantially the same definition of gross income since 1974. Both statutes have always defined gross income as including "public assistance received in a cash grant." TP §§9-104(a)(8) and 9-102(a)(6). However, SDAT has always interpreted the specific designation of a "cash grant" to exclude food stamps. The administrative switch by DHR to electronic transaction cards did not alter the intent of the tax credit statutes nor the functioning of the

food stamp program. Therefore, the use of plastic cards instead of paper stamps does not equate to a cash payment, and the value of that assistance would not be counted as income for an individual renter.

## IV

## Conclusion

In summary, it is our opinion that:

1. The payment of a public assistance grant to a renter does not constitute a State "subsidy" within the meaning of TP §9-102(a)(9)(iv)3.

2. State loans for the construction or rehabilitation of a rental property do not constitute a subsidy to a renter in that property.

3. A food stamp allotment accessible by an electronic transaction card is not "public assistance received in a cash grant."

J. Joseph Curran, Jr.
*Attorney General*

David M. Lyon
*Assistant Attorney General*

Steven D. Keller
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*